UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ROBERT YOUNG, *et al.*,

    Plaintiffs,

vs.

RANDALL WINKLER, *et al.*,

    Defendants.

Case No. 1:16-cv-1006

District Judge Timothy S. Black
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANTS' MOTION TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT (DOC. 26) BE GRANTED IN PART AND DENIED IN PART; AND (2) PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT (DOC. 33) BE DENIED**

---

The Court is acutely aware of the unique facts presented by this case, which was initiated by Plaintiffs on October 17, 2016. Doc. 1; *see also* doc. 12. Plaintiffs Robert and Elizabeth Young, a married couple who reside in Carlisle, Ohio ("the City"), allege that Robert Young suffers from post-traumatic stress disorder ("PTSD") and that the City, as well as a number of individual City officials (hereinafter collectively referred to as "the City"), discriminated against them on the basis of Mr. Young's disability. *See* doc. 12 at PageID 135-48.

On March 27, 2017, before the parties engaged in any discovery in this case, Judge Black referred the matter to the undersigned for mediation. Doc. 15. On May 15, 2017, the undersigned -- in a long mediation session lasting many hours -- worked diligently to settle this dispute, and assisted counsel for both sides in memorializing a preliminary draft of a settlement agreement. *See* Mediator's Note dated May 16, 2017.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

The undersigned finds significant the fact that this case settled before the parties engaged in any discovery at all, thus not only avoiding the inherent risks associated with litigation in general, but also avoiding the costs -- financial and emotional -- also associated therewith. Because this case settled before discovery commenced, the Court must remain mindful that the allegations asserted by Plaintiffs regarding Mr. Young's mental health and need for accommodations remain just that: allegations. While the Court takes Plaintiffs' allegations regarding Mr. Young's mental health very seriously -- and has no reason to doubt those allegations -- it is important to remain mindful that those allegations have not been subject to discovery (such as the discovery of sensitive mental health records, the taking of independent medical examinations, or lengthy cross-examination during depositions) or the rigors of fact-finding at trial.

In the months after the case settled at the May 2017 mediation, attorneys for both sides negotiated a formal settlement agreement (with some assistance from the undersigned via informal telephone conferences with counsel for both parties), which the parties ultimately signed. Doc. 26-2. The case was dismissed by the Court with prejudice on August 17, 2017. *See* doc. 19. Now, more than one year later, this case is back before the Court on Defendants' motion to enforce the settlement agreement as written (doc. 26) and Plaintiffs' cross motion, filed under Fed. R. Civ. P. 60(b) on August 21, 2018, seeking relief from the Court's final Order that dismissed this case with prejudice as a result of the parties' settlement (doc. 33).

In that latter motion, Plaintiffs seek relief from the dismissal of this case to re-open this litigation. Judge Black referred both motions to the undersigned. Docs. 24, 44. After careful review, the Court is compelled by Supreme Court and Sixth Circuit precedent to find that Plaintiffs have failed to meet the exceedingly high burden required to qualify for relief from final judgment

under Rule 60(b). [2] Additionally, as Plaintiffs acknowledge that they breached the settlement agreement (doc. 33 at PageID 343-44), enforcement of that agreement -- as written, and as agreed to by Plaintiffs and their counsel -- is appropriate.

I.

As alleged in the amended complaint, Plaintiffs house four chickens and three pygmy goats in accessory buildings on their property in violation of City ordinances. Doc. 12 at PageID 138-43. Plaintiffs allegedly requested accommodations from the City for Mr. Young's disability, claiming that the animals provide emotional support to Mr. Young and assist him in coping with his disability. *Id*. at PageID 138-43. Following the City's alleged denial of the requested accommodations, *see id*. at PageID 141, Plaintiffs filed this action alleging violations of: (1) the Fair Housing Amendments Act, 42 U.S.C. § 3601, et seq.; (2) Ohio Rev. Code § 4112.02(H); and (3) the Rehabilitation Act, 29 U.S.C. § 701, et seq. Doc. 12 at PageID 144-48.

In May 2017 -- again, before they conducted any discovery in the case -- the parties, all proceeding with the assistance of counsel, voluntarily settled this case following a day-long mediation session with the undersigned. *See* docs. 15, 16, 26-1. In the parties' formal settlement agreement -- which was negotiated in the months after the mediation and finally executed by Plaintiffs on August 7, 2017 -- Defendants did not concede any facts alleged in the case and did not admit liability for any of Plaintiffs' claims. Doc. 26-2. Instead, "because of the cost and uncertainly of litigation," Defendants agreed to make a payment of $20,000 in consideration for,

---

[2] This court has authority to rule on these motions despite its involvement in the prior mediation. *See Blackmon v. Eaton Corp.*, 587 F. App'x 925, 933-34 (6th Cir. 2014); *Rehkoph v. REMS*, Inc., 40 F. App'x 126, 130 (6th Cir. 2002); *see also SEC v. ING USA Annuity & Life Ins. Co.*, 360 F. App'x 826, 828 (9th Cir. 2009). The Court also notes that, in drafting this Report and Recommendation, it has relied solely on facts presented by counsel in their motion papers, not on confidential (or other) information learned during the mediation process. *Accord Blackmon*, 587 F. App'x at 934. Because the undersigned does not rely on information learned during mediation and focuses solely on the non-confidential formal settlement agreement between the parties, this Report and Recommendation is not being filed under seal.

*inter alia*, a dismissal of all claims with prejudice and agreement to a number of non-monetary terms. *See id*. The non-monetary terms provided that Plaintiffs were, *inter alia*, permitted to keep the four chickens for a one-year period; keep the three pygmy goas until one passed away; and, thereafter, could keep two pygmy goats indefinitely. Specifically, the parties agreed in relevant part as follows:

    a.    Plaintiffs can keep the current four (4) chickens on the property for up to one year from the date of the mediation agreement (May 15, 2017), after which time Plaintiffs agree to keep no chickens on the property;

    b.    Once any of the chickens pass, Plaintiffs shall not replace the deceased chickens;

    c.    Plaintiffs can keep the current three (3) pygmy goats on the property;

    d.    After the death of any one of the current pygmy goats, Plaintiffs will keep a maximum of two (2) pygmy goats on the property (the remaining two pygmy goats may be replaced by new pygmy goats upon their deaths);

    e.    Plaintiffs will give all street signs in their possession to the Municipality within thirty (30) days from this agreement; the signs at issues are as follows:

- A yellow direction arrow sign;
- A bridge weight limit 3 tons sign;
- A push button for walk light sign;
- A bridge weight limit 15 tons sign;
- A Fort Ancient directional arrow; and
- A Do Not Enter sign

    f.    Releasees agree to not harass Plaintiffs;

    g.    The [City], through any of its departments or offices, may inspect the property for compliance once every three (3) months and will give Plaintiffs notice of such inspection not less than 24 hours in advance of any such inspection (this agreement does not limit the [City] from inspecting the property for any other lawful reason or purpose); the frequency of the [City]'s inspections may decrease proportionally with Plaintiffs' documented continuous and consecutive compliance; a law enforcement

> officer may accompany any municipal employee for any such inspection for safety of Plaintiffs and the employee; Plaintiff may have his counselor from Access Counseling present; all corrective action will be delivered to Plaintiffs in writing and a copy of all such correspondence will be provided to Plaintiffs' counsel . . .;
>
> h. Plaintiffs can keep the goat pen in its current location as one of the two accessory buildings;
>
> i. Aside from the terms of this agreement, Plaintiffs agree to comply with all other animal regulations, rules or ordinances lawfully imposed by the [City];
>
> j. Plaintiffs agree to maintain a total of two separate accessory buildings on the property (the goat pen and the garden shed; the playhouse will be removed);
>
> k. Plaintiffs will complete and submit permit applications for the goat pen, garden shed, fence and porch and allow those structures to be inspected for compliance with applicable codes (Plaintiffs' attorney may be present for all such inspections) within 45 days;
>
> l. Should inspections reveal any issues with the goat pen, garden shed, fence or porch, it is Plaintiffs' responsibility to bring such structures into compliance at their own cost within a reasonable time;
>
> m. Plaintiffs will remove any trailers or vehicles parked on the grass areas of the property;
>
> n. The [City] agrees to send an employee for training on fair housing mandates through the Miami Valley Fair Housing Center at the [City]'s cost;
>
> o. Plaintiff Robert Young agrees to continue all anger management counseling so long as such counseling is recommended by his treating source;
>
> p. All claims will be dismissed with prejudice;

Doc. 26-2 at PageID 264-65.

Having been advised that the case settled at mediation, Judge Black conditionally dismissed the case on May 31, 2017. Doc. 18. Subsequently, on August 19, 2017, the Court substituted the conditional dismissal Order with a Final Order of dismissal and termination entry, dismissing the action with prejudice and retaining jurisdiction solely for the purpose of enforcing the terms of the settlement agreement. Doc. 19 at PageID 182. Eleven months after this case was

dismissed with prejudice, Defendants filed the instant motion to enforce on July 17, 2018. Doc. 26. On August 21, 2018 -- over a year after the case was dismissed with prejudice -- Plaintiffs responded to Defendants' motion to enforce by moving for relief from judgment. Doc. 33.

## II.

Defendants allege that Plaintiffs have failed to comply with a number of terms of the settlement agreement including, *inter alia*, the terms regarding removal of accessory structures, submitting permit applications, parking on the grass, removal of chickens from the property, returning of street signs to the City, and inspections of the property by the City's Code Enforcement Officer. *See* doc. 26 at PageID 239-45. Plaintiffs oppose Defendants' contentions on only two points; namely, whether they: (1) are required to pay the typical application fees when submitting permit applications to the City; and (2) have returned all street signs at issue in Section 5(e) of the settlement agreement. *See* doc. 26-2 at PageID 264; doc. 33 at PageID 343-44. Otherwise, Plaintiffs appear to acknowledge their failure to comply with the settlement agreement in all other respects and, instead of disputing their non-compliance, seek relief from the settlement agreement under Rule 60(b)(6).

"Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Further, "[p]ublic policy strongly favors settlement of disputes without litigation." Id. This is so because, "[b]y such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to the citizens whose taxes support the latter." Id. In other words, "[a]n amicable compromise provides the more speedy and reasonable remedy for the dispute." Id. Accordingly, "[s]ettlement agreements should . . . be upheld whenever equitable and policy considerations so permit." *Id*.

### A. Rule 60(b) Motion

One avenue of obtaining relief from a settlement agreement and the dismissal of a case with prejudice is a motion invoking the provisions of Rule 60(b), which "provides six discrete paths for undoing a final judgment." *See Cummings v. Greater Cleveland Reg'l Transit Auth.*, 865 F.3d 844, 846 (6th Cir. 2017). Here, Plaintiffs cite Rules 60(b)(2) and 60(b)(6) in their request for relief from judgment. Doc. 33. Plaintiffs acknowledge that Rule 60(b)(2)[3] is "inapplicable to the instant facts" and argue that Rule 60(b)(6) is the only proper avenue for relief from judgment in this case. Doc. 33 at PageID 348-49. To that end, Plaintiffs argue that their compliance with the settlement agreement would impose "an extreme and undue hardship" on them "as evidenced by Mr. Young's mental decompensation" post-settlement. Doc. 33 at PageID 349-50.

"Rule 60(b)(6) is a catchall provision that permits a district court to set aside a judgment for "any other reason that justifies relief."" *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009) (citing Fed. R. Civ. P. 60(b)(6)). Rule 60(b)(6) "does not particularize the factors that justify relief, but [the Supreme Court has] previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," while also cautioning that it should only be applied in "extraordinary circumstances[.]" *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (citing *Klapprott v. United States*, 335 U.S. 601, 614-615 (1949); *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). "[T]he party seeking relief under Rule 60(b) bears the burden of establishing the grounds

---

[3] Rule 60(b)(2) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Notably, a motion seeking relief under Rule 60(b)(2) "must be made within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Because Plaintiffs' motion was filed more than a year after the entry of Judge Black's final Order, they are time-barred for seeking relief under Rule 60(b)(2). Notably, this one-year bar for relief from judgment does not apply to relief sought under Rule 60(b)(6). *See* Fed. R. Civ. P. 60(c)(1).

for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).

The undersigned -- despite being sensitive to the unique issues and demands presented by this case and its settlement -- finds that granting relief from judgment under Rule 60(b)(6) is inappropriate here. Generally, relief under Rule 60(b)(6) is unavailable to set aside dismissal of an action set in motion by a party's voluntary relinquishment of a cause of action through settlement. *See G.G. Marck & Assocs., Inc. v. N. Am. Invs, Corp.*, 465 F. App'x 515, 517 (6th Cir. 2012) (stating that "Rule 60(b)(6) is an extraordinary form of relief, one rarely invoked to vacate a settlement agreement"); *Reynoso v. City & Cty. of San Francisco*, No. 10-CV-00984-MEJ, 2016 WL 4364144, at *3 (N.D. Cal. Aug. 16, 2016) (holding that, "[b]ecause they voluntarily settled their claims, Plaintiffs cannot invoke Rule 60(b)(6) to obtain relief from judgment"). This is so on account of the important public policy reasons set forth above, *i.e.*, because "[s]ettlement agreements should . . . be upheld whenever equitable and policy considerations so permit." *G.G. Marck & Assocs.*, 465 F. App'x at 517 (quoting *Aro Corp.*, 531 F.2d at 1372).

While the undersigned is certainly sympathetic to Mr. Young's alleged mental condition and decompensation since entering into the settlement agreement, from the undersigned's perspective, Mr. Young's negative reaction to compliance with the terms of the settlement agreement was largely predictable and foreseeable at the time Plaintiffs, with the assistance of counsel, chose to settle their claims.[4] For instance, Mr. Young's longtime treating therapist Debra Cotter, M.S., L.S.W., remarked as early as October 4, 2016 -- over seven months before the parties mediated this case in May 2017 -- about "a decompensation in Robert's mental health recovery

---

[4] Again, the undersigned is sympathetic to Mr. Young's alleged PTSD. To this end, the undersigned notes that the parties have raised no allegation regarding Mr. Young's mental competency to enter into a settlement agreement either at the time of the mediation or, subsequently, at the time he executed the final settlement agreement. Doc. 26-2.

8

since the beginning of the process to remove his support animals from his property[.]" *See* doc. 3-1 at PageID 52. She noted that, "without them . . . Robert will decompensate further" and that he struggles to "interact with anyone outside his comfort zone which is relatively small." *Id*. In addition, Mr. Young's longtime treating psychiatrist, Judith Freeland, M.D., similarly opined on October 4, 2016 that the "support animals assist Mr. Young with coping with his disability, and without them, I believe Mr. Young will decompensate further." *Id*. at PageID 53.

In light of such statements by Mr. Young's longtime mental health treatment providers -- and in light of the fact that Plaintiffs were both in attendance at the mediation and relied on the advice of an experienced civil rights attorney when assessing, *inter alia*, "the cost and uncertainty of litigation" (doc. 26-2 at PageID 261) and whether to voluntarily enter into the settlement agreement -- the undersigned cannot conclude that Plaintiffs' alleged failure to fully comprehend the extent of the impact the settlement would have on Mr. Young's mental state is an "extraordinary circumstance" warranting relief from judgment. *United States v. Bank of New York*, 14 F.3d 756, 760 (2d Cir. 1994) (holding that "[a] failure to properly estimate the loss or gain from entering a settlement agreement is not an extraordinary circumstance that justifies relief under Rule 60(b)(6)." Accordingly, although the Court is sensitive to, and mindful of Mr. Young's mental health concerns, Plaintiffs' motion for relief from judgment under Rule 60(b)(6) merits denial.

  **B.**  **Motion to Enforce Settlement Agreement**

With regard to Defendants' motion to enforce, as noted above, there appear to be only two issues in dispute concerning Plaintiffs' non-compliance: (1) the payment of permit application fees; and (2) the return of certain signs to the City that were in Plaintiffs' possession. *See supra*.

  1.  **Street Signs**

There appears to be no dispute that the City retrieved those signs from Plaintiffs, albeit after the date Plaintiffs agreed to turn them over voluntarily. *See* doc. 26-2 at PageID 264; doc.

38 at PageID 379. Because the City is in possession of the signs, the undersigned finds this issue moot and, therefore, denial of Defendants' motion on this basis is appropriate.

### 2. Permit Application Fees

Resolution of the issue as to whether or not Plaintiffs are required to pay the fees associated with permit applications requires the Court to interpret the parties' settlement agreement. "Settlement agreements are a type of contract and are therefore governed by contract law." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Because the settlement agreement in this case was entered into in Ohio, the Court must apply Ohio law. *Id*. (holding that, when considering issues of contract law, federal courts are generally to apply "the law of the place of the contract's making"). In fact, the parties themselves agreed that the settlement agreement would "be governed by and construed in accordance with the law of the State of Ohio." Doc. 26-2 at PageID 266.

With regard to permit applications, the settlement agreement, as noted above, states that "Plaintiffs will complete and submit permit applications for the goat pen, garden shed, fence and porch and allow those structures to be inspected for compliance with applicable codes (Plaintiffs' attorney may be present for all such inspections) within 45 days[.]" Doc. 26-2 at PageID 265. There is no provision in the contract stating either that Plaintiffs must submit the fee otherwise required for permit applications or that Defendants will waive such any such fee. Defendants argue that silence regarding the payment of applications fees means that they never agreed to waive such fees. *See* doc. 38 at PageID 378. Plaintiffs, on the other hand, argue that because the agreement requires only that they "complete and submit permit applications[,]" they need not pay an fee in conjunction with submitting the permit applications. Doc. 33 at PageID 343-44.

In Ohio, contracts must "be interpreted to give effect to the parties' intent." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017). "To discern the parties'

intent, courts look to the plain and ordinary meaning of the language used in their agreement." *Id*. "Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 875 N.E.2d 561, 566 (2007)).

Here, the undersigned concludes that the clause in the settlement agreement requiring Plaintiffs to "complete and submit permit applications," in its ordinary sense, requires that Plaintiff provide the City with everything generally required of other citizens for processing and determining whether to issue a permit. If the City ordinarily requires that applicants pay a fee associated with the processing of an application and issuance of a permit, then the phrase "complete and submit permit applications" necessarily includes submitting the required application fee. Accordingly, the undersigned concludes that Plaintiffs must pay the usual fee associated with a permit application. As a result, the undersigned recommends that Defendants' motion to enforce be granted in this regard.

Plaintiffs do not contest their failure to comply with other provisions of the settlement agreement and, therefore, the undersigned also recommends that Defendants' motion to enforce be granted in all other respects.

### III.

For the foregoing reasons, the undersigned **RECOMMENDS** that: (1) Defendants' motion to enforce the settlement agreement (doc. 26) be **DENIED** as it relates to the return of signs previously in Plaintiffs' possession but **GRANTED** in all other respects; and (2) Plaintiffs' motion for relief from judgment (doc. 33) be **DENIED**.

Date: December 17, 2018　　　　　　　　　s/ Michael J. Newman  
　　　　　　　　　　　　　　　　　　　Michael J. Newman  
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

11

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).