UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

ROBERT YOUNG, *et al.*,

    Plaintiffs,

vs.

RANDALL WINKLER, *et al.*,

    Defendants.

Case No. 1:16-cv-1006

District Judge Timothy S. Black
Magistrate Judge Michael J. Newman

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANTS' MOTION FOR SANCTIONS (DOC. 46) BE DENIED; AND (2) THE COURT RELINQUISH CONTINUING JURISDICTION TO ENFORCE THE SETTLEMENT AGREEMENT BETWEEN THE PARTIES**

This civil case is before the Court on Defendants' motion for sanctions. Doc. 46. Plaintiffs filed a memorandum in opposition and Defendants filed a reply. Docs. 51, 54. The undersigned has carefully considered the foregoing, and Defendants' motion is now ripe for decision.

**I.**

Plaintiffs Robert and Elizabeth Young, a married couple who reside in Carlisle, Ohio ("the City"), filed this action in October 2016 alleging that the City, as well as numerous other individual City officials, discriminated against them on the basis of Robert Young's disability, *i.e.*, post-traumatic stress disorder ("PTSD"). Doc. 1; *see also* doc. 12 at PageID 135-48. Specifically, at the time Plaintiffs filed this action, they housed 4 chickens and 3 pygmy goats in accessory buildings on their property -- in violation of City ordinances -- and requested accommodations from the City for Mr. Young's disability, claiming that the animals provided emotional support to Mr. Young and assisted him in coping with his disability. *Id.* at PageID 138-43.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Following the City's denial of the requested accommodations, *see id.* at PageID 141, Plaintiffs filed this action alleging violations of: (1) the Fair Housing Amendments Act, 42 U.S.C. § 3601 *et seq.*; (2) Ohio Rev. Code § 4112.02(H); and (3) the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Doc. 12 at PageID 144-48. On May 15, 2017, the parties voluntarily settled this case following a day-long mediation session. *See* docs. 15, 16, 26-1. The essential terms of the settlement between the parties were memorialized in a mediation agreement signed by Plaintiffs, Plaintiffs' counsel, a representative of Defendants, and Defendants' counsel. Doc. 26-1.[2] Having been advised that the case settled at mediation, the Court conditionally dismissed the case with prejudice on May 31, 2017. Doc. 18.

A full and final release and settlement agreement was later executed by the parties in August 2017. Defendants agreed to make a payment in the amount of $20,000 to Plaintiffs and their lawyer in consideration for a dismissal of all claims with prejudice. *See* doc. 26-2. The parties also agreed to the following non-monetary terms in the full and final release and settlement agreement:

    a.    Plaintiffs can keep the current four (4) chickens on the property for up to one year from the date of the mediation agreement (May 15, 2017), after which time Plaintiffs agree to keep no chickens on the property;

    b.    Once any of the chickens pass, Plaintiffs shall not replace the deceased chickens;

    c.    Plaintiffs can keep the current three (3) pygmy goats on the property;

    d.    After the death of any one of the current pygmy goats, Plaintiffs will keep a maximum of two (2) pygmy goats on the property (the remaining two pygmy goats may be replaced by new pygmy goats upon their deaths);

    e.    Plaintiffs will give all street signs in their possession to the Municipality within thirty (30) days from this agreement; the signs at issues are as follows:

---

[2] The terms of the mediation statement reflect that the "specifics of a formal settlement and release agreement" would be "negotiated between counsel and executed by the parties and shall supersede this [mediation] agreement[.]" Doc. 26-1 at PageID 260.

- A yellow direction arrow sign;

- A bridge weight limit 3 tons sign;

- A push button for walk light sign;

- A bridge weight limit 15 tons sign;

- A Fort Ancient directional arrow; and

- A Do Not Enter sign

f. Releasees agree to not harass Plaintiffs;

g. The [City], through any of its departments or offices, may inspect the property for compliance once every three (3) months and will give Plaintiffs notice of such inspection not less than 24 hours in advance of any such inspection (this agreement does not limit the [City] from inspecting the property for any other lawful reason or purpose); the frequency of the [City]'s inspections may decrease proportionally with Plaintiffs' documented continuous and consecutive compliance; a law enforcement officer may accompany any municipal employee for any such inspection for safety of Plaintiffs and the employee; Plaintiff may have his counselor from Access Counseling present; all corrective action will be delivered to Plaintiffs in writing and a copy of all such correspondence will be provided to Plaintiffs' counsel . . .;

h. Plaintiffs can keep the goat pen in its current location as one of the two accessory buildings;

i. Aside from the terms of this agreement, Plaintiffs agree to comply with all other animal regulations, rules or ordinances lawfully imposed by the [City];

j. Plaintiffs agree to maintain a total of two separate accessory buildings on the property (the goat pen and the garden shed; the playhouse will be removed);

k. Plaintiffs will complete and submit permit applications for the goat pen, garden shed, fence and porch and allow those structures to be inspected for compliance with applicable codes (Plaintiffs' attorney may be present for all such inspections) within 45 days;

l. Should inspections reveal any issues with the goat pen, garden shed, fence or porch, it is Plaintiffs' responsibility to bring such structures into compliance at their own cost within a reasonable time;

> m. Plaintiffs will remove any trailers or vehicles parked on the grass areas of the property;
>
> n. The [City] agrees to send an employee for training on fair housing mandates through the Miami Valley Fair Housing Center at the [City]'s cost;
>
> o. Plaintiff Robert Young agrees to continue all anger management counseling so long as such counseling is recommended by his treating source;
>
> p. All claims will be dismissed with prejudice;

Doc. 26-2 at PageID 264-65. On August 19, 2017, the Court substituted the conditional dismissal Order with an Order of dismissal and termination entry, dismissing the action with prejudice and retaining jurisdiction solely for the purpose of enforcing the terms of the settlement agreement. Doc. 19 at PageID 182.

Eleven months after this case was dismissed with prejudice, Defendants moved to enforce the settlement agreement. Doc. 26. On August 21, 2018, Plaintiffs responded to Defendants' motion to enforce by moving for relief from judgment under Rule 60(b). Doc. 33. Ultimately, the undersigned recommended that Defendants' motion to enforce be granted and that Plaintiffs' motion for relief from judgment be denied. Doc. 45. No party filed any objection to the Report and Recommendation, and it was adopted by Judge Black following a *de novo* review. Doc. 49. Defendants now move for the imposition of sanctions -- namely, attorney's fees and costs -- associated with their having to seek compliance with the parties' settlement agreement through enforcement by the Court. Doc. 46.

## II.

Generally, each party must bear their own attorney's fees "in the absence of statutory authorization." *Ray A. Scharer & Co. v. Plabell Rubber Prod., Inc.*, 858 F.2d 317, 320 (6th Cir. 1988) (citation omitted). This general rule "does not apply, however, where a party or counsel have acted in bad faith in the instigation or conduct of litigation, and in those circumstances, the court has the inherent authority to assess an award of attorney's fees against either the litigant or

4

his attorney." *Id.* "[T]he district court's inherent authority to impose a monetary sanction applies equally to parties and their attorneys." *Id.* at 321.

However, "[a]n award of attorney's fees . . . is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Id.* at 320. "[T]he mere fact that an action is without merit does not amount to bad faith." *Smith v. ABN AMRO Mortg. Grp. Inc.*, 434 F. App'x 454, 468 (6th Cir. 2011); *Allstate Ins. Co. v. Tricare Mgmt. Activity*, 662 F. Supp.2d 883, 895 (W.D. Mich. 2009) ("Sanctions are not available to punish people simply for advancing arguments that are unlikely to succeed"). "[I]n order for a court to find bad faith sufficient for imposing sanctions under its inherent powers, the court must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Smith*, 434 F. App'x at 468.

In addition to the Court's inherent authority to impose sanctions, the United States Code provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "[U]nlike sanctions imposed under a court's inherent authority, § 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Smith*, 434 F. App'x at 469 (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)).

Noting that the Court has broad discretion in determining whether sanctions should issue under its inherent authority or under 28 U.S.C. § 1927, *see Jordan v. City of Detroit*, 595 F. App'x 486, 489 (6th Cir. 2014), the undersigned concludes that the conduct at issue here falls short of the egregious conduct required to impose sanctions. Although the Court ultimately disagreed with Plaintiffs, they, through counsel, presented a legitimate dispute over the terms of the settlement

5

agreement relating to the payment of permit application fees. In addition, Plaintiffs, through counsel, also presented a reasonable argument in seeking relief from the settlement agreement based upon the deterioration of Plaintiff Robert Young's mental health.

The Court notes that Defendants, in their motion to enforce, also presented arguments that Plaintiffs, *inter alia*, installed pavers in violation of local ordinances; kept a playhouse on the property as late as March 26, 2018; and parked on the grass on their property a number of times after the case was dismissed. Doc. 26-2 at PageID 265. Certainly, the undersigned recommended that Defendants' motion to enforce be granted without qualification, but now questions whether the Court, instead, should have declined, at that time, to exercise the jurisdiction it retained to enforce all of the provisions of the settlement, especially those provisions related to Plaintiffs' compliance with local zoning laws. *Cf. Arata v. Nu Skin Int'l, Inc.*, 96 F.3d 1265, 1269 (9th Cir. 1996) ("[T]he district court's decision to terminate its previously retained jurisdiction was well within its discretion"); *Nissim Corp. v. ClearPlay, Inc.*, 499 F. App'x 23, 30 (Fed. Cir. 2012) ("[A] district court has broad discretion to relinquish jurisdiction over enforcing the parties' settlement agreement") (Moore, J., dissenting).

Notably, Plaintiffs' were the only parties to the underlying litigation who formally asserted claims, and those claims have been dismissed with prejudice as contemplated by the terms of the parties' settlement agreement. *See* doc. 26-2 at PageID 262 ("In full and final settlement of all claims for damages, including attorney's fees, that the Plaintiffs have or may have against [Defendants], $20,000 shall be paid [to them]"). Defendants asserted no formal counterclaims in the underlying action and the issues regarding noncompliance with local ordinances -- despite being the predominate issues for which enforcement was sought and remain the only issues for which enforcement could be sought in the future -- generally arose only as part of the parties' negotiated settlement. Because of this, and because "land use disputes are uniquely matters of

6

local concern more aptly suited for local resolution[,]" *Insomnia Inc. v. City of Memphis*, 278 F. App'x 609, 613 (6th Cir. 2008), the undersigned, *sua sponte*, concludes that the retention of jurisdiction to enforce the parties' settlement agreement should be rescinded. Continuing to retain jurisdiction to enforce the settlement keeps open the possibility that this Court's scarce resources will be utilized, for example, each time someone parks a vehicle on Plaintiffs' grass -- a purely local issue for which local agencies and courts, and not federal courts, are better equipped and suited to enforce.

**III.**

Accordingly, based on the foregoing, the undersigned **RECOMMENDS** that: (1) Defendants' motion for sanctions (doc. 46) be **DENIED**; (2) the Court **RELINQUISH** continuing jurisdiction to enforce the terms of the settlement agreement reached in this case; and (3) this case remain **TERMINATED** on the Court's docket.

Date:   June 26, 2019                              s/ Michael J. Newman
                                                                        Michael J. Newman
                                                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).